UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
STEVEN MANNEY and JOSEPH LEONARDO,
as assignees of Bassline Digital Inc.,

                         Plaintiffs,

            - against-

RALF REICHERT and INTERGROOVE U.S., INC.,

                   Defendants.
------------------------------------------------------------------X
FEUERSTEIN, J.

**OPINION AND ORDER**
**13 CV 4413 (SJF)(GRB)**

**FILED**
IN CLERK'S OFFICE
U S DISTRICT COURT E D N Y

★ MAR 2 8 2014 ★

**LONG ISLAND OFFICE**

On or about May 10, 2013, plaintiffs Steven Manney and Joseph Leonardo (collectively, "plaintiffs"), as assignees of Bassline Digital Inc. ("Bassline"), commenced an action in the Supreme Court of the State of New York, County of Nassau ("the state court") against defendant Intergroove U.S., Inc. ("Intergroove U.S.") and Ralf Reichert ("Reichert"), alleging one (1) claim seeking, *inter alia*, compensatory and punitive damages for fraud in the inducement. On August 5, 2013, Reichert filed a notice of removal pursuant to 28 U.S.C. §§ 1441(b) and 1446, removing the action to this Court pursuant to this Court's diversity jurisdiction under 28 U.S.C. § 1332(a). Thereafter, (1) plaintiffs moved pursuant to 28 U.S.C. § 1447(c) to remand this matter to the state court; (2) Reichert moved to dismiss the action against him pursuant to Rules 12(b)(2), (3) and (6) of the Federal Rules of Civil Procedure for lack of *in personam* jurisdiction, improper venue and failure to state a cause of action, respectively, and on the basis of *forum non conveniens*; and (3) plaintiffs filed separate motions seeking to strike Reichert's motion to dismiss and reply to plaintiffs' opposition to the motion to dismiss. For the reasons stated herein, plaintiffs' motions are denied and decision is deferred on Reichert's motions to dismiss.

1

# I. Background

## A. Factual Allegations

### 1. The Parties

Plaintiffs commenced this action as the assignees of Bassline, a Delaware corporation

licensed to do business in the State of New York, which has its principal place of business at 53

East Merrick Road, Suite 173, Freeport, New York 11520.[1] (Complaint ["Compl."], ¶ 1).

Plaintiffs are primarily engaged in the business of video production. (Compl., ¶ 5).

Reichert is a resident of Offenbach, Germany and a citizen of the Federal Republic of

Germany. (Notice of Removal ["Rem."], ¶ 7). Reichert is the managing director of Intergroove

Media GMBH ("Intergroove Media"), formerly known as Intergroove Tontrager Vertreibs

GMBH, (Compl., ¶¶ 2, 6; see Rem., ¶ 12 [referring to Reichert as Intergroove Media's managing

director]), which, according to plaintiffs, is a German corporation with its principal places of

business in Frankfurt and Offenbach Am Main, Germany. (Compl., ¶ 2). Intergroove Media "is

engaged in the business of distributing pre-recorded videos (DVDs) and pre-recorded music."

(Compl., ¶ 6).

Plaintiffs allege, "[u]pon information and belief," that Intergroove U.S. is a New York

corporation with a principal place of business at 622 Broadway, Suite 3b, New York, New York

10012, and is a wholly-owned subsidary of Intergroove Media. (Compl., ¶¶ 3, 7). According to

Reichert, Intergroove U.S. "is a dissolved and defunct New York corporation that was

fraudulently joined to prevent diversity," (Rem., ¶ 9); Intergroove Media never had more than a

---

[1] According to Reichert, the address at 53 E. Merrick Road, Freeport, New York 11520 is a UPS
store and "suite 173" is a post office box. (Rem., ¶ 8). Nonetheless, it is undisputed that
Leonardo and Manney are both citizens of the State of New York. (Id.)

fifteen percent (15%) interest in Intergroove U.S., (Rem., ¶ 10); and Intergroove Media sold its interest in Intergroove U.S. in 2002. (Id.) Reichert asserts: (1) that in 1995, a company named "Under Cover Music Group New York, Inc." ("UCMG-NY") started doing business under the name "Intergroove U.S;" (2) that in 1996, UCMG-NY formed Intergroove U.S. as its wholly-owned subsidiary, having two hundred (200) shares of common stock; (3) that in the same year, Intergroove Media purchased from Intergroove U.S. thirty (30) of its two hundred (200) shares of stock; (4) that on or about August 27, 2002, Intergroove Media sold all of its thirty (30) shares in Intergroove U.S. to UCMG Europe AG ("UCMG Europe"); (5) that neither Intergroove Media nor Reichert has ever owned any interest in UCMG Europe, nor have they had any ownership interest in Intergroove U.S. since August 27, 2002; (6) that in or about March 2003, UCMG Europe filed insolvency proceedings in Germany; (7) that Intergroove U.S. was dissolved by proclamation of the Secretary of State of the State of New York published on January 25, 2012 pursuant to New York Tax Law; (8) that Intergroove U.S. had not filed a biennial statement or any other documents with the New York State Department of State since December 30, 1998; and (9) that there is no company answering to the name "Intergroove U.S., Inc." at the address currently listed on the New York Secretary of State website. (Rem., ¶¶ 11-13).

## 2. The Parties' Business Relationship

Plaintiffs allege that between approximately June 28, 2008 through July 9, 2008, Peter Matthias ("Matthias") traveled to New York and met with plaintiffs. (Compl., ¶ 8). According to plaintiffs, during that time: (1) it was agreed that Matthias would be their "exclusive agent/ representative in Europe in order to solicit Plaintiffs [sic] video service," (id.); and (2)

3

"Intergroove [Media] was discussed." (Id.).

Plaintiffs allege that in September 2008, Matthias "negotiated a deal with Intergroove [Media]." (Compl., ¶ 8). According to plaintiffs, "Matthias was to share with Plaintiffs in the revenue generated from Intergroove [Media]." Id.

In late November 2008, "Matthias arranged a meeting with Plaintiffs and Ralf Reichert[,] managing director of Intergroove [Media], and in late December 2008 an agreement was reached." (Compl., ¶ 9). According to plaintiffs, "[o]n or about December 23, 2008, after being contacted by Matthias, [they] through Bassline * * *, entered into a contract ["the December 2008 Contract"] whereby Bassline would deliver approximately twenty-five (25) to thirty (30) video productions to Intergroove [Media], and Intergroove [Media] would pay Bassline at a rate of $650.00 per hour for the Plaintiff's [sic] services * * *." (Compl., ¶ 10).

Plaintiffs allege that between approximately January 2009 and July 2009, they delivered twenty-seven (27) video productions to Intergroove Media "in a timely manner" pursuant to the December 2008 Contract, (Compl., ¶ 11), and sent several invoices to Intergroove Media requesting payment for their services. (Compl., ¶ 12). Specifically, plaintiffs sent the following invoices to Intergroove Media: (a) a February 1, 2009 invoice containing total charges of one hundred eighty thousand seven hundred dollars ($180,700.00); (b) a March 1, 2009 invoice containing total charges of one hundred ninety-one thousand four hundred twenty-five dollars ($191,425.00); (c) an April 1, 2009 invoice containing total charges of sixty-six thousand nine hundred fifty dollars ($66,950.00); (d) a May 1, 2009 invoice containing total charges of one hundred fifty-one thousand four hundred fifty dollars ($151,450.00); and (e) a June 1, 2009 invoice containing total charges of one hundred ninety-one thousand one hundred dollars

4

($191,100.00). (Id.) According to plaintiffs on or about March 29, 2009 and June 30, 2009, Intergroove Media made payments of nine thousand four hundred fourteen dollars and seventy-five cents ($9,414.75) and seven thousand six hundred seventy-five dollars and twenty cents ($7,675.20), respectively, towards the balance due plaintiffs. (Compl., ¶¶ 13-14). In addition, on or about July 6, 2009, plaintiffs "made an adjustment to the amount of $433.05 to Intergroove [Media]." (Compl., ¶ 15). Thus, according to plaintiffs, "[a]s of July 7, 2009, and continuing to the current date, pursuant to the December Contract, Intergroove [Media] has a balance due and owing to the Plaintiffs in the sum of $764,102.00." (Compl., ¶ 16).

On or about June 29, 2009, plaintiffs met with Reichert and Matthias in Germany to demand payment from Intergroove Media on the balance due them of the invoices. (Compl., ¶¶ 17-18). According to plaintiffs, Reichert promised to provide payment "and stated that they [sic] had a subsidiary corporation which was to be a guarantor that payments would be made." (Compl., ¶ 19). "The subsidiary corporation being the defendant Intergroove U.S., Inc." (Id.)

Plaintiffs allege that "[n]o payments were forthcoming, and it was discovered by [them] that Ralf Reichert and Matthias made a new deal with another corporation, thus eliminating [them] from any further involvement with the Defendants." (Compl., ¶ 20; see also Compl., ¶ 29 ["Plaintiffs subsequently discovered that the Defendant Reichert had made arrangements with another company to do work for Intergroove [Media] with Reichert's approval and thus eliminating the Plaintiffs from participation of the proceeds."]) According to plaintiffs, they "demanded payment from the guarantor Intergroove U.S. which was refused." (Compl., ¶ 30).

Plaintiffs allege, "[u]pon information and belief," that Reichert "received the proceeds [for plaintiffs' video productions] from Intergroove [Media] without remitting any portion due to

5

[them] and * * * is wrongfully in possession of [their] money." (Compl., ¶ 31).

B.    Procedural History

1.    Previous Litigation

On January 11, 2010, Bassline commenced an action in this Court against Intergroove

Media (" the Bassline action"), alleging claims for breach of contract; goods and services sold

and delivered; implied contract; unjust enrichment; and promissory estoppel, which was assigned

to the Honorable Arthur D. Spatt, United States District Judge, under docket number 10-cv-0097.

On March 26, 2010, Senior Judge Spatt entered a default judgment against Intergroove Media

based upon its failure to answer the complaint or to otherwise appear in the Bassline action, and

referred the matter to the Honorable E. Thomas Boyle, former United States Magistrate Judge, to

hear and determine the amount of damages to be awarded to Bassline. Magistrate Judge Boyle

issued a report and recommendation dated July 29, 2010 ("the Report"), recommending that the

default judgment against Intergroove Media be vacated for lack of personal jurisdiction since

Intergroove Media had never been served with process in that action. By memorandum of

decision and order dated October 7, 2010, Senior Judge Spatt adopted the Report in its entirety;

vacated the default judgment against Intergroove Media; and dismissed Bassline's complaint

against Intergroove Media without prejudice based upon Bassline's failure to effect proper

service upon it. Judgment was entered against Bassline in the Bassline action on October 13,

2010.

On or about July 12, 2010, plaintiffs, in their purported capacity as "assignees of Bassline

Digital Inc.," commenced an action ("Manney I") against Intergroove Media, Matthias and Eva

6

Matthias (collectively, "the Matthias defendants" or "the Matthias parties") and Intergroove U.S. in the state court, alleging the same claims against Intergroove Media as had been asserted in the Bassline action, with the exception that they omitted their claim based upon promissory estoppel and added a claim of fraud in the inducement. Specifically, the Manney I complaint asserted claims for breach of contract; work, labor and services rendered; implied contract; unjust enrichment; and fraud in the inducement relating to the defendants' purported failure to pay invoices sent to Intergroove Media on February 1, 2009, March 1, 2009, April 1, 2009, May 1, 2009 and June 1, 2009 in the total amount of seven hundred sixty-four thousand one hundred two dollars ($764,102.00). On October 1, 2010, Intergroove Media removed Manney I to this Court pursuant to 28 U.S.C. §§ 1441(b) and 1446, based upon this Court's diversity jurisdiction under 28 U.S.C. § 1332, and the action was assigned to me under docket number 10-cv-4493. By order dated November 30, 2011, *inter alia*, the branches of the defendants' respective motions seeking dismissal of Manney I based upon plaintiffs' lack of legal capacity to sue were granted and Manney I was dismissed in its entirety without prejudice. Judgment was entered against plaintiffs in Manney I on December 6, 2011. By opinion and order dated September 28, 2012, plaintiffs' motion for reconsideration of the November 30, 2011 order and final judgment was denied. By opinion and order dated March 24, 2014, plaintiffs' subsequent motion seeking relief from the September 28, 2012 order pursuant to Rule 60(b) of the Federal Rules of Civil Procedure was denied.

According to Reichert, on March 29, 2012, Intergroove Media and the Matthias parties commenced an action ("the Darmstadt action") against plaintiffs in the court in Darmstadt, Germany ("the Darmstadt court") seeking, *inter alia*, judgment declaring: (1) that neither

7

Intergroove Media nor the Matthias parties entered into any contract with plaintiffs in or after 2008; and (2) that plaintiffs do not have any claim for remuneration against Intergroove Media or the Matthias parties. According to Reichert, the Darmstadt court determined that the claim against plaintiffs is competent. (Amann Decl., ¶ 9).

On or about October 10, 2012, plaintiffs, as assignees of Bassline,[2] commenced a second action in the state court against Intergroove Media, the Matthias defendants and Intergroove U.S. ("Manney II"), asserting claims seeking damages in the total amount of sixty-six thousand nine hundred fifty dollars ($66,950.00), plus interest and costs, for breach of contract; work, labor and services rendered; implied contract; and unjust enrichment relating to the defendants' purported failure to pay only the two (2) invoices sent to Intergroove Media on April 1, 2009.[3] On January 3, 2013, Intergroove Media removed Manney II to this Court pursuant to 28 U.S.C. §§ 1441(b) and 1446, based upon this Court's diversity jurisdiction under 28 U.S.C. § 1332, and the action was assigned to me under docket number 13-cv-0053. By opinion and order dated August 19, 2013, *inter alia*, plaintiffs' motion to remand Manney II to the state court was granted and Manney II was remanded to the state court.

---

[2] In Manney II, plaintiffs submitted evidence: (1) that on March 29, 2012, Bassline filed an application for authority to do business in the State of New York; (2) that as of October 19, 2012, Bassline was still authorized to do business in the State of New York; (3) that a Certificate of Renewal for Bassline was filed with the Secretary of State of the State of Delaware on December 6, 2011; and (4) that Bassline is a corporation in good standing and has a legal corporate existence in the State of Delaware. (Plaintiffs' Memorandum of Law in Support of Motion to Remand ["Plf. Mem."], Ex. 1). Thus, plaintiffs no longer lacked the legal capacity to sue as assignees of Bassline in Manney II.

[3] All of plaintiffs' claims in Manney II were pled in the alternative. Plaintiffs did not assert a claim for fraud in the inducement in Manney II.

2. Current Action

On or about May 10, 2013, plaintiffs, as assignees of Bassline, commenced this action ("Manney III") in the state court against defendants Intergroove U.S. and Reichert, alleging one (1) claim seeking, *inter alia*, compensatory and punitive damages for fraud in the inducement. Plaintiffs allege, *inter alia*: (1) that Reichert "made materially false and misleading representations on June 29, 2009, to [them] by failing to advise them that they [sic] had no intention of paying any further money to [them] even though he stated that the codefendant Intergroove U.S. Inc. was a guarantor of payment and that future payments would be made via Intergroove U.S. Inc.[,]" (Compl., ¶ 25); (2) that Reichert made those representations "knowing that [they] would rely on [them] to their deteriment[,]" (Compl., ¶ 26); (3) that they "were induced by, and relied on defendants Intergroove U.S. and Reichert, that payment would be made and that as insurance the defendant had a New York Corporation (Intergroove U.S., Inc.) that would insure said payment, and [they] did not know that the Defendant Intergroove U.S. had no intention of making or guarantying payments[,]" (Compl., ¶ 27); and (4) that Reichert "made such representation knowing that [they] would rely on [it] and continue to deal with Intergroove [Media] because of the false representations[,]" (Compl., ¶ 28).

Plaintiffs seek, *inter alia*: (1) judgment declaring that Reichert and Intergroove U.S. "should hold all proceeds they received in a Constructive Trust for the benefit of the Plaintiffs[,]" (Compl., ¶ 32); (2) compensatory damages in the amount of seven hundred sixty-four thousand one hundred two dollars ($764,102.00); and (3) punitive damages in the amount of two million two hundred ninety two thousand three hundred six dollars ($2,292,306.00). (Compl. at 5).

On August 5, 2013, Reichert filed a notice of removal pursuant to 28 U.S.C. §§ 1441(b)

and 1446, removing <u>Manney III</u> to this Court pursuant to this Court's diversity jurisdiction under 28 U.S.C. § 1332(a). Pending before the Court are: (1) plaintiffs' motion pursuant to 28 U.S.C. § 1447(c) to remand this matter to the state court; (2) Reichert's motions to dismiss this action pursuant to Rules 12(b)(2), (3) and (6) of the Federal Rules of Civil Procedure for lack of *in personam* jurisdiction, improper venue and failure to state a cause of action, respectively, and on the basis of *forum non conveniens*; and (3) plaintiffs' separate motions to strike Reichert's (a) motion to dismiss and (b) reply to their opposition to his motion to dismiss.

II.     DISCUSSION

      A.      Determination of Motions

      Reichert contends that the branch of his motion seeking dismissal on the basis of *forum non conveniens* should be decided prior to plaintiff's motion to remand.

      "[A] federal court generally may not rule on the merits of a case without first determining that it has jurisdiction over the category of claim in suit (subject-matter jurisdiction) and the parties (personal jurisdiction)." <u>Sinochem International Co. Ltd. v. Malaysia International Shipping Corp.</u>, 549 U.S. 422, 430-31, 127 S. Ct. 1184, 167 L. Ed. 2d 15 (2007) (citing <u>Steel Co. v. Citizens for Better Environment</u>, 523 U.S. 83, 93-102, 118 S. Ct. 1003, 140 L. Ed. 2d 210 (1998)). "Without jurisdiction the court cannot proceed at all in any cause; it may not assume jurisdiction for the purpose of deciding the merits of the case." <u>Id.</u> at 431, 127 S. Ct. 1184 (quotations and citation omitted).

      However, "a federal court has leeway 'to choose among threshold grounds for denying audience to a case on the merits.'" <u>Sinochem International</u>, 549 U.S. at 431, 127 S. Ct. 1184

10

(quoting Ruhrgas AG v. Marathon Oil Co., 526 U.S. 574, 585, 119 S. Ct. 1563, 143 L. Ed. 2d 760 (1999)). "A *forum non conveniens* dismissal denies audience to a case on the merits * * *; it is a determination that the merits should be adjudicated elsewhere." Id. at 432, 127 S. Ct. 1184 (quotations, brackets and citation omitted). "A district court therefore may dispose of an action by a *forum non conveniens* dismissal, bypassing questions of subject-matter and personal jurisdiction, when considerations of convenience, fairness, and judicial economy so warrant." Id. "If * * * a court can readily determine that it lacks jurisdiction over the cause or the defendant, the proper course would be to dismiss on that ground." Id. at 436, 127 S. Ct. 1184. "But where subject-matter or personal jurisdiction is difficult to determine, and *forum non conveniens* considerations weigh heavily in favor of dismissal, the court properly takes the less burdensome course." Id.

    1.  Subject Matter Jurisdiction

  On their motion seeking remand to the state court, plaintiffs contend, *inter alia*, that remand is required because this Court does not have subject matter jurisdiction under 28 U.S.C. § 1332(a) since Intergroove U.S. is a non-diverse defendant properly joined in this matter. Reichert contends, *inter alia*, that there is complete diversity of citizenship because Intergroove U.S., the only non-diverse defendant, was fraudulently joined in this action.

  Section 1332(a) of Title 28 of the United States Code "require[s] complete diversity between all plaintiffs and all defendants." Lincoln Property Co. v. Roche, 546 U.S. 81, 89, 126 S. Ct. 606, 163 L. Ed. 2d 415 (2005); see also Herrick Co., Inc. v. SCS Communications, Inc., 251 F.3d 315, 322 (2d Cir. 2001) ("[D]iversity jurisdiction is available only when all adverse

parties to a litigation are completely diverse in their citizenships.") "[I]t is well established that the party seeking to invoke jurisdiction under 28 U.S.C. § 1332 bears the burden of demonstrating that the grounds for diversity exist and that diversity is complete." Herrick Co., 251 F.3d at 322-323; see also Universal Licensing Corp. v. Paola del Lungo S.p.A., 293 F.3d 579, 581 (2d Cir. 2002) ("[T]he party invoking federal jurisdiction bears the burden of proving facts to establish that jurisdiction." (quotations and citation omitted)).

It is undisputed that for purposes of diversity jurisdiction, at the time this action was commenced, both plaintiffs and Intergroove U.S. were citizens of the State of New York and Reichert was a citizen of the Federal Republic of Germany. Plaintiffs claim that since Intergroove U.S. is a New York corporation with its principal place of business in New York, its presence in this action defeats this Court's diversity jurisdiction and, thus, this case must be remanded to the state court pursuant to 28 U.S.C. § 1447(c). However, Reichert contends that Intergroove U.S. was fraudulently joined in this matter and, thus, its presence in this action does not defeat this Court's diversity jurisdiction.


a.    Fraudulent Joinder

Pursuant to the doctrine of fraudulent joinder, "[a] plaintiff may not defeat diversity jurisdiction by improperly joining a non-diverse defendant with no genuine connection to the matter." Brown v. Eli Lilly and Co., 654 F.3d 347, 356 (2d Cir. 2011); see also Bounds v. Pine Belt Mental Health Care Resources, 593 F.3d 209, 215 (2d Cir. 2010) ("A plaintiff may not defeat federal court diversity jurisdiction by improperly joining as a defendant a non-diverse party with no real connection to the controversy. This rule is known as the doctrine of fraudulent

12

joinder[.]") The Second Circuit has held that:

> "[t]he doctrine of fraudulent joinder is meant to prevent plaintiffs from joining non-diverse parties in an effort to defeat federal jurisdiction. Under the doctrine, courts overlook the presence of a non-diverse defendant if from the pleadings there is no possibility that the claims against that defendant could be asserted in state court. * * * The defendant bears the heavy burden of proving this circumstance by clear and convincing evidence, with all factual and legal ambiguities resolved in favor of plaintiff. * * *"

Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc., 373 F.3d 296, 302 (2d Cir. 2004) (citations omitted).

"In order to show that naming a non-diverse defendant is a 'fraudulent joinder' effected to defeat diversity, the defendant must demonstrate, by clear and convincing evidence, either that there has been outright fraud committed in the plaintiff's pleadings, or that there is no possibility, based on the pleadings, that a plaintiff can state a cause of action against the non-diverse defendant in state court." Pampillonia v. RJR Nabisco, Inc., 138 F.3d 459, 461 (2d Cir. 1998). "Joinder will be considered fraudulent when it is established that there can be no recovery against the defendant under the law of the state on the cause alleged." Whitaker v. American Telecasting, Inc., 261 F.3d 196, 207 (2d Cir. 2001) (quotations, brackets and citation omitted). "The defendant seeking removal bears a heavy burden of proving fraudulent joiner [sic], and all factual and legal issues must be resolved in favor of the plaintiff." Pampillonia, 138 F.3d at 461.

In order to ascertain whether Intergroove U.S. was properly joined in this action, i.e., whether plaintiff can state a claim for fraudulent inducement against Intergroove U.S. in state court, I must first determine what law applies to that claim: the law of New York, where plaintiffs and Intergroove U.S. are domiciled and the claimed injury was inflicted, or the law of Germany, where Reichert is domiciled and the purported misrepresentations were made.

13

i.      Choice of Law

"A federal court sitting in diversity * * * must apply the choice of law rules of the forum state." Licci ex rel. Licci v. Lebanese Canadian Bank, SAL ("Licci I"), 672 F.3d 155, 157 (2d Cir. 2012) (quoting Rogers v. Grimaldi, 875 F.2d 994, 1002 (2d Cir. 1989)); see also Wall v. CSX Transportation, Inc., 471 F.3d 410, 415 (2d Cir. 2006) ("[I]n diversity cases, federal courts look to the laws of the forum state in deciding issues regarding conflicts of law.") Accordingly, New York choice-of-law rules apply in adjudicating plaintiffs' fraudulent inducement claim.

"Under New York choice-of-law rules, the first step in any case presenting a potential choice of law issue is to determine whether there is an actual conflict between the laws of the jurisdictions involved." Licci I, 672 F.3d at 157 (quotations, brackets and citations omitted); see also In re Thelen LLP, 736 F.3d 213, 219 (2d Cir. 2013), certified question accepted by Thelen LLP v. Seyfarth Shaw LLP, 22 N.Y.3d 1017, 981 N.Y.S.2d 349, 4 N.E.2d 359 (2013) (accord). "A choice-of-law analysis need not be performed unless there is an actual conflict between the applicable rules of two relevant jurisdictions." Licci I, 672 F.3d at 157 (quotations and citation omitted). "If no actual conflict exists, and if New York is among the relevant jurisdictions, the court may simply apply New York law." Id.; see also Wall, 471 F.3d at 422-23.

To state a claim for fraudulent inducement under New York law, plaintiffs "must allege: (i) a material misrepresentation of a presently existing or past fact; (ii) an intent to deceive; (iii) reasonable reliance on the misrepresentation by [plaintiffs]; and (iv) resulting damages." Johnson v. Nextel Communications, Inc., 660 F.3d 131, 143 (2d Cir. 2011); see also Ipcon Collections LLC v. Costco Wholesale Corp., 698 F.3d 58, 62 (2d Cir. 2012) (accord); Mandarin Trading Ltd. v. Wildenstein, 16 N.Y.3d 173, 178, 919 N.Y.S.2d 465, 944 N.E.2d 1104 (N.Y.

14

2011) ("Generally, in a claim for fraudulent misrepresentation, a plaintiff must allege a misrepresentation or a material omission of fact which was false and known to be false by defendant, made for the purpose of inducing the other party to rely upon it, justifiable reliance of the other party on the misrepresentation or material omission, and injury[.]" (quotations and citation omitted)). Under German law, "a person is civilly liable for fraud if, with the intent of obtaining for himself or a third person an unlawful material benefit, such person damages the assets of another, by provoking or affirming a mistake by pretending that false facts exist or by distorting or suppressing true facts." (Declaration of Alexander Setzer-Rubruck ["Setzer-Rubruck Decl."], ¶ 10 (citing Strafgesetzbuch [German Criminal Code] § 263 and the German Civil Code [Bürgerliches Gesetzbuch] § 823). Thus, there is an actual conflict of law.[4]

When an actual conflict exists between the relevant substantive laws for a tort claim, "New York conflicts law directs that the law of the jurisdiction having the greatest interest in the litigation will be applied," Licci I, 672 F.3d at 157 (quotations, brackets and citations omitted), and "the only facts or contacts which obtain significance in defining State interests are those

---

[4] Moreover, "Germany does not permit awards of punitive damages[,]" In re Air Crash at Belle Harbor, New York on November 12, 2001, Nos. 02 MDL 1448, 02 Civ. 439, 2008 WL 6515109, at * 8 (S.D.N.Y. Oct. 10, 2008); see also Exxon Shipping Co. v. Baker, 554 U.S. 471, 497, 128 S. Ct. 2605, 171 L. Ed. 2d 570 (2008) (recognizing that some legal systems, including Germany, "not only decline to recognize punitive damages themselves but refuse to enforce foreign punitive judgments as contrary to public policy."), whereas New York law permits the recovery of punitive damages in any action which "has its genesis in the contractual relationship between the parties," New York University v. Continental Ins. Co., 87 N.Y.2d 308, 316, 639 N.Y.S.2d 283, 662 N.E.2d 763 (N.Y. 1995), where a plaintiff establishes "that the defendant's conduct: (1) is actionable as an independent tort; (2) was sufficiently egregious; and (3) was directed not only against the plaintiff, but was part of a pattern of behavior aimed at the public generally." Schonfeld v. Hilliard, 218 F.3d 164, 183-84 (2d Cir. 2000) (quoting Rocanova v. Equitable Life Assurance Society of the United States, 83 N.Y.2d 603, 613, 612 N.Y.S.2d 339, 634 N.E.2d 940 (1994)); see also New York Marine & General Ins. Co. v. Tradeline (L.L.C.), 266 F.3d 112, 130 (2d Cir. 2001).

which relate to the purpose of the particular law in conflict." In re Thelen, 736 F.3d at 219

(quotations, brackets and citations omitted). "Under this formulation, the significant contacts

are, almost exclusively, the parties' domiciles and the locus of the tort." Id. at 219-20 (quoting

Schultz v. Boy Scouts of America, Inc., 65 N.Y.2d 189, 197, 491 N.Y.S.2d 90, 480 N.E.2d 679

(N.Y. 1985)); see also Krock v. Lipsay, 97 F.3d 640, 645 (2d Cir. 1996). "Interest analysis is a

flexible approach intended to give controlling effect to the law of the jurisdiction which, because

of its relationship or contact with the occurrence or the parties, has the greatest concern with the

specific issue raised in the litigation." Licci I, 672 F.3d at 157-58 (quotations and citations

omitted).

"In tort-law disputes, interest analysis distinguishes between two sets of rules: conduct-

regulating rules and loss-allocating rules." Licci I, 672 F.3d at 158; see also In re Thelan, 736

F.3d at 220. The alleged conflict in this case concerns a conduct-regulating rule, i.e., a rule "that

people use as a guide to govern[] their primary conduct." Licci I, 672 F.3d at 158 (quotations

and citation omitted). "If conflicting conduct-regulating laws are at issue, the law of the

jurisdiction where the tort occurred will generally apply because that jurisdiction has the greatest

interest in regulating behavior within its borders." Licci I, 672 F.3d at 158 (quotations and

citations omitted); see also In re Thelan, 736 F.3d at 220 (accord). "[F]or claims based on fraud,

the locus of the tort is generally deemed to be the place where the injury was inflicted, rather than

where the fraudulent act originated." In re Thelen, 736 F.3d at 220.

Thus, applying the interest-analysis test, New York has the greater interest in this

litigation because although Reichert allegedly made the misrepresentations in Germany, the

claimed injury was inflicted upon plaintiffs in New York. Accordingly, New York law applies to

16

plaintiff's fraudulent inducement claim. Since the issue of whether Intergroove U.S. was fraudulently joined in this action to defeat this Court's subject matter jurisdiction can be easily determined by applying the law of New York, it is proper to determine plaintiff's motion to remand before considering any branch of Reichert's motions to dismiss.

      B.      Motion to Remand

          1.      Fraudulent Joinder and Subject Matter Jurisdiction

As noted above, in order to state a fraudulent inducement claim under New York law, a plaintiff must allege: "(i) a material misrepresentation of a presently existing or past fact; (ii) an intent to deceive; (iii) reasonable reliance on the misrepresentation by [plaintiffs]; and (iv) resulting damages." Johnson, 660 F.3d at 143.

          a.      Material Misrepresentation of a Presently Existing or Past Fact

The only misrepresentations alleged in the complaint are that Reichert "made materially false and misleading representations on June 29, 2009, to [them] by failing to advise them that they [sic] had no intention of paying any further money to [them] even though he stated that the codefendant Intergroove U.S. Inc. was a guarantor of payment and that future payments would be made via Intergroove U.S. Inc." (Compl., ¶ 25; see also Compl., ¶ 19).

For purposes of a fraudulent inducement claim, an alleged misrepresentation is "material" if "it influenced the party's decision to enter into the contract." Sheffield Commercial Corp. v. Clemente, 792 F.2d 282, 285 (2d Cir. 1986); see also Banque Franco-Hellenique de Commerce International et Maritime v. Christophides, 106 F.3d 22, 26 (2d Cir. 1997) ("A party asserting

17

fraud must be warranted in taking the misrepresented matter into account when deciding to act * * *. [That] requirement is materiality * * *."); <u>Aguirre v. Best Care Agency, Inc.</u>, 961 F. Supp. 2d 427, 448-49 (E.D.N.Y. 2013) ("Materiality refers to statements that are sufficiently important or relevant to influence the plaintiff's decision.") Moreover, "fraudulent inducement claims necessarily involve actions that predate the signing of a contract * * *." <u>Smith/Enron Cogeneration Ltd. Partnership, Inc. v. Smith Cogeneration International, Inc.</u>, 198 F.3d 88, 99 (2d Cir. 1999).

Even assuming, *arguendo*, that Reichert's purported misrepresentations to plaintiffs during the June 29, 2009 meeting can somehow be attributed to Intergroove U.S., they are not material, i.e., the misrepresentations, made more than six (6) months after plaintiffs entered into the December 2008 Contract with Intergroove Media, could not have influenced plaintiffs' decision to enter into that contract.

b. Reasonable Reliance

Although plaintiffs conclusorily claim that they "were induced by, and relied on defendants Intergroove U.S. and Reichert, that payment would be made and that as insurance the defendant had a New York Corporation (Intergroove U.S., Inc.) that would insure said payment, and [they] did not know that the Defendant Intergroove U.S. had no intention of making or guarantying payments[,]" (Compl., ¶ 27), they do not assert any facts from which it may reasonably be inferred that they did, or did not do, anything in reliance upon Reichert's statements other than to continue demanding payment of the money allegedly due them under the December 2008 contract.

18

c.    Damages

Under New York law, plaintiffs must establish that they suffered losses that were "the direct, immediate, and proximate result of the misrepresentation." Kregos v. Associated Press, 3 F.3d 656, 665 (2d Cir. 1993); see also Kaye v. Grossman, 202 F.3d 611, 614 (2d Cir. 2000) ("To prove damage in a fraud action, a plaintiff must demonstrate that the defendant's conduct proximately caused her economic harm. * * * [T]he plaintiff must have suffered losses as a direct, immediate, and proximate result of the defendant's misrepresentation." (quotations and citations omitted)); Banque Franco-Hellenique, 106 F.3d at 27 ("The recipient of misleading information must prove that the misrepresentation proximately caused his injury.") "An injury is proximately caused by the fraud if it is a natural or probable consequence of the defrauder's misrepresentation or if the defrauder ought reasonably to have foreseen that the injury was a likely consequence of the fraud." Banque Franco-Hellenique, 106 F.3d at 27. Moreover, "[t]he damages must also be independent of other causes." Kregos, 3 F.3d at 665; see also Bennett v. U.S. Trust Co. of New York, 770 F.2d 308, 316 (2d Cir. 1985) ("To establish the required causation, the plaintiff must show that the loss was a direct result of the defendant's wrongful actions and that it was independent of other causes." (quotations, brackets and citation omitted)).

With the exception of their claim for punitive damages, which are not recoverable against Intergroove U.S.[5], the damages plaintiffs seek in this case are the same damages recoverable for breach of the December 2008 Contract, i.e., plaintiffs seek only to recover what they would have been paid under the December 2008 Contract. Thus, plaintiffs are clearly attempting to recoup

---

[5] Plaintiffs cannot state a claim for punitive damages against Intergroove U.S. under New York law because Reichert's purported statements were neither "sufficiently egregious" nor "part of a pattern of behavior aimed at the public generally." Schonfeld, 218 F.3d at 183-84.

only their contract damages. Lehman v. Dow Jones & Co., Inc., 783 F.2d 285, 296 (2d Cir. 1986) (affirming dismissal of the plaintiff's fraud claim because the plaintiff's request "for $950,000.00, which is what he would have been paid under the alleged oral agreement, [was] clearly an attempt to recoup his 'loss-of' benefit or contract damages" and the plaintiff "neither claimed a specific injury flowing from his reliance on [the defendant's] alleged misrepresentations nor adduced facts sufficient to permit an inference of such injury.") Moreover, the complaint is bereft of any factual allegations from which it may reasonably be inferred that plaintiffs suffered any actual pecuniary losses above their contract damages as a direct result of the alleged misrepresentations by Reichert. Since plaintiffs do not allege that Reichert's purported misrepresentations "resulted in any loss independent of the damages allegedly incurred for breach of [the December 2008 Contract]," LIUS Group International Endwell, LLC v. HFS International, Inc., 92 A.D.3d 918, 920, 939 N.Y.S.2d 525 (2d Dept. 2012); see also Lee v. Mattarrese, 17 A.D.3d 539, 540, 793 N.Y.S.2d 457 (2d Dept. 2005) (holding that the fraud claim should have been dismissed because, *inter alia*, "the damages [the plaintiffs] sought to recover [were] the same damages recoverable for breach of contract"), and the complaint is devoid of any factual allegations from which it may reasonably be inferred that plaintiffs sustained an actual pecuniary loss as a direct and proximate result of Reichert's purported misrepresentations, there is no possibility that plaintiffs can state a fraudulent inducement claim against Intergroove U.S. in state court.

For all of the reasons set forth above, Intergroove U.S. is not properly joined in this action and plaintiffs' claims against it are therefore dismissed without prejudice pursuant to Rule 21 of the Federal Rules of Civil Procedure. Since Intergroove U.S., the non-diverse defendant, is

dismissed from this action as having been fraudulently joined and there is complete diversity of citizenship between the remaining parties, plaintiffs' motion to remand this action to the state court is denied.

## 2. Procedural Violations

In addition to arguing that this Court does not have subject matter jurisdiction, plaintiffs contend, *inter alia*, that remand is required because defendants failed to comply with the procedural requirements of 28 U.S.C. §§ 1446(a) and (d).

Assuming, *arguendo*, that Reichert initially failed to comply with the procedural requirements of 28 U.S.C. § 1446(a) and (d), such failures do not require remanding this case to the state court.

"Procedural rules such as the directions found in section 1446(a) are not jurisdictional and the failure to file all the state court papers. . . is curable in the federal court if there is a motion to remand." In re Methyl Tertiary Butyl Ether ("MTBE") Products Liability Litigation 399 F. Supp. 2d 340, 348 (S.D.N.Y. 2005) (quotations, brackets and citation omitted); see also Johnson v. Medisys Health Network, No. 10-cv-1596, 2011 WL 5222917, at * 5 (E.D.N.Y. June 1, 2011), report and recommendation adopted as modified by 2011 WL 4101323 (E.D.N.Y. Sept. 8, 2011) ("That the defendants have not filed a complete copy of the state court records and proceedings is a technical, not a jurisdictional, defect and can be cured.") Moreover, remand is not required where, as here, the plaintiff is not prejudiced by the defendant's delay in complying with 28 U.S.C. § 1446(d). See, e.g. Gomes v. ANGOP, Angola Press Agency, No. 11-cv-0580, 2012 WL 3637453, at * 5 (E.D.N.Y. Aug. 22, 2012), aff'd, 541 Fed. Appx. 141 (2d Cir. Nov. 19,

2013); <u>Park v. McGowan</u>, No. 11-cv-3454, 2011 WL 4963759, at * 4 (E.D.N.Y. Oct. 19, 2011); <u>Ynoa v. Kutner</u>, 10 Civ. 5398, 2011 WL 1796320, at * 3 (S.D.N.Y. May 5, 2011); <u>Calderon v. Pathmark Stores, Inc.</u>, 101 F. Supp. 2d 246, 247-48 (S.D.N.Y. 2000). Indeed, plaintiffs clearly knew no later than August 12, 2013, only one (1) week after Reichert filed the notice of removal, that this action had been removed to this Court, as that is the date on their letter to the Honorable Joseph F. Bianco, United States District Judge, to whom this action was originally assigned, requesting, *inter alia*, reassignment of this action to me. (Doc. No. 4). Accordingly, the branch of plaintiffs' motion seeking to remand this action to the state court based upon Reichert's purported violations of the procedural requirements of 28 U.S.C. § 1146(a) and (d) is denied.

C.    Motions to Strike

Plaintiffs move to strike both Reichert's motion to dismiss and his reply to their opposition to his motion to dismiss pursuant to "Rule 12" of the Federal Rules of Civil Procedure. Only Rule 12(f) of the Federal Rules of Civil Procedure pertains to motions to strike and that rule provides, in pertinent part, that a "court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). However, neither a motion to dismiss, nor a reply to an opposition to a motion to dismiss, is a pleading. <u>See</u> <u>In re Bear Stearns Companies, Inc. Securities, Derivative, and ERISA Litigation</u>, 763 F. Supp. 2d 423, 581 (S.D.N.Y. 2011); <u>Spiteri v. Russo</u>, No. 12-cv-2780, 2013 WL 4806960, at * 64 (E.D.N.Y. Sept. 7, 2013); <u>see</u> <u>also</u> Fed. R. Civ. P. 7(a) ("Only these pleadings are allowed: (1) a complaint; (2) an answer to a complaint; (3) an answer to a counterclaim designated as a counterclaim; (4) an answer to a crossclaim; (5) a third-party complaint; (6) an

answer to a third-party complaint; and (7) if the court orders one, a reply to an answer.") Accordingly, plaintiffs cannot move under Rule 12(f) of the Federal Rules of Civil Procedure to strike Reichert's motion to dismiss and reply to their opposition to his motion to dismiss.

Although courts also have "inherent authority to strike any filed paper which it determines to be abusive or otherwise improper under the circumstances," In re Bear Stearns, 763 F. Supp. 2d at 581 (quotations and citation omitted); see also Natural Resources Defense Council, Inc. v. U.S. Food and Drug Administration, 884 F. Supp. 2d 108, 115 n. 5 (S.D.N.Y. 2012); In re NASDAQ Market-Makers Antitrust Litigation, 164 F.R.D. 346, 349-50 (S.D.N.Y. 1996), "motions to strike are not favored and will be denied unless the allegations have no possible relation to the controversy." In re NASDAQ Market-Makers, 164 F.R.D. at 350. Since nothing in Reichert's motion papers or reply can be construed to be abusive or improper, plaintiffs' motions to strike are denied in their entirety.

D.     Reichert's Motion to Dismiss

Reichert moves to dismiss this case pursuant to Rules 12(b)(2), (3) and (6) for lack of personal jurisdiction, improper venue and failure to state a claim for relief, respectively, and on the basis of *forum non conveniens*. Since Reichert has raised the issue of this Court's personal jurisdiction over him, the Court is precluded from considering the merits of plaintiff's claim against Reichert prior to a determination of whether *in personam* jurisdiction over him exists. Since "[p]ersonal jurisdiction * * * can be purposely waived * * *," City of New York v. Mickalis Pawn Shop, LLC, 645 F.3d 114, 133 (2d Cir. 2011), the Court will defer considering Reichert's motion to dismiss **for ten (10) days from the date of this Order** in order to afford

23

him an opportunity to waive his challenge to this Court's *in personam* jurisdiction in light of the determination herein.

III.    Conclusion

For the reasons stated herein, plaintiffs' claims against Intergroove U.S. are dismissed without prejudice for misjoinder pursuant to Rule 21 of the Federal Rules of Civil Procedure; plaintiffs' motions to remand this action to the state court and to strike Reichert's motions to dismiss and reply to their opposition to his motion to dismiss are denied; and decision is deferred upon Reichert's motion to dismiss **for ten (10) days from the date of this Order**. The Clerk of the Court shall serve notice of entry of this Order on all parties in accordance with Rule 77(d)(1) of the Federal Rules of Civil Procedure.

SO ORDERED.                                        s/ Sandra J. Feuerstein

                                        _____
                                        SANDRA J. FEUERSTEIN
                                        United States District Judge

Dated: March 28, 2014
        Central Islip, N.Y.